[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 31, 2006
THOMAS K. KAHN
CLERK

No. 05-14951
Non-Argument Calendar

_____

D. C. Docket No. 04-00031-CR-OC-10-GRJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BOBBY GUY KING,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 31, 2006)**

Before BIRCH, BARKETT and RONEY, Circuit Judges.

PER CURIAM:

Bobby Guy King appeals his 48 month sentence for conspiring to possess

with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), and

(b)(1)(D); and intentionally obtaining and attempting to obtain marijuana, while being an inmate of a federal prison, in violation of 18 U.S.C. § 1791(a)(2), (b)(3), and (d)(1)(B). King argues five issues on appeal:

 (1) Whether the district court abused its discretion by admitting evidence of King's post-indictment criminal conduct at trial

 (2) Whether the district court abused its discretion by admitting evidence at trial that King had threatened a cooperating witness

 (3) Whether the district court abused its discretion by denying King's belated request to subpoena three inmates to appear at trial

 (4) Whether the evidence was sufficient to sustain a conviction for conspiracy

 (5) Whether the district court's application of the career offender guideline under an advisory guidelines scheme violated King's Sixth Amendment right to have a jury determine sentencing enhancements beyond a reasonable doubt

We affirm and address the appellate arguments *seriatim*, stated as in the appellant's brief.

 I. "That 404B evidence of a post-indictment extrinsic act should not have been introduced at trial because the prejudicial value far outweighed its minimal probative value."

We review the district court's rulings on admission of evidence for an abuse of discretion. *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000).

Rule 404(b) permits the admission of evidence of extrinsic offenses to show, *inter alia*, knowledge, intent, and plan or absence of mistake. *See* Fed.R.Evid. 404(b); *United States v. Lehder-Rivas*, 955 F.2d 1510, 1515-16 (11th Cir. 1992).

> In determining whether evidence is admissible under Rule 404(b), we apply a three-part test: (1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; (3) the government must offer sufficient proof so that the jury could find that defendant committed the act. A similarity between the other act and a charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense.

*United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005) (citations and internal quotations omitted). The principles governing extrinsic offense evidence are the same whether that offense occurs before or after the offense charged. *United States v. Beechum*, 582 F.2d 898, 903 n.1 (5th Cir. 1978) (*en banc*).

The district court did not abuse its discretion by admitting evidence that on August 30, 2004, a date outside the time frame charged in the indictment, prison officers witnessed increased traffic at King's cell, smelled a strong odor of marijuana emanating from his cell, and seized marijuana from him. With respect to relevance, King's plea of not guilty, without an accompanying affirmative removal, made his intent a material issue. *United States v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005). King's post-indictment conduct was relevant to the

3

intent at issue in the charged conspiracy to distribute marijuana. *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1995). King's post-indictment conduct was very similar to the offense charged. *See Beechum*, 582 F.2d at 903.

With respect to the element of prejudice, the district court did not abuse its discretion by finding that the extrinsic evidence was not unduly prejudicial. Evidence of King's August 30 conduct was highly probative of his intent to participate in a conspiracy to distribute marijuana. *See Beechum*, 582 F.2d at 914-15. Moreover, the district court instructed the jurors twice as to the significance of this evidence and its proper consideration within the subject trial.

II. "That the district court erred in refusing to direct the United States Marshal Service to transport, pursuant to writs *ad testificandum*, three federal inmates that were critical to his defense."

The proper method for securing a prisoner's presence at trial is a petition for a writ of habeas corpus *ad testificandum*, however, courts have required defendants in criminal cases requesting petitions for writs of habeas corpus *ad testificandum* to comply with the requirements of Federal Rule of Criminal Procedure 17(b). *United States v. Rinchack*, 820 F.2d 1557, 1567 (11th Cir. 1987).

Federal Rule of Criminal Procedure 17 provides for the issuance of subpoenas in criminal cases, and states: "[u]pon a defendant's *ex parte*

4

application, the court must order that a subpoena be issued for a named witness if the defendant shows . . . the necessity of the witness's presence for an adequate defense." Fed.R.Crim.P. 17(b). "This showing must be satisfactory to the district court, which means that the district court exercises a broad discretion in granting or denying a motion for the issuance of a subpoena made by a defendant financially unable to pay the fees of the witness." *Welsh v. United States*, 404 F.2d 414, 417 (11th Cir. 1968) (internal quotation omitted). The grant or denial of a Rule 17(b) motion is reviewed for abuse of discretion. *Rinchack*, 820 F.2d at 1566.

In *Rinchack*, we held that a district court may refuse to issue a writ of habeas corpus *ad testificandum* solely on the grounds that the petition is untimely so long as the defendant had adequate notice of the trial date. We held that where the defendant "had three full weeks from the time the trial was initially set to the time the case actually went to trial to file a petition for a writ of habeas corpus *ad testificandum*, yet did not file the request until the trial actually began" the district court did not abuse its discretion in denying the request. The defendant in *Rinchack* argued that the district court abused its discretion because the court did not inquire into what the potential witnesses might be expected to testify, however, we rejected this argument stating that the "law is crystal clear that the burden of showing necessity and relevance is on the defendant." *Rinchack*, 820 F.2d at 1568.

5

Pursuant to this precedent, we hold there was no abuse of discretion under the facts of this case.

King had approximately two months before the continued trial date to collect and prepare any necessary information to request that the three inmates be subpoenaed. King, however, waited until two calendar days--and no business days--prior to trial to submit his request for subpoenas. Aside from alleging that he did not have the necessary information to make the request, King did not offer any explanation for his delay.

III. "That the district court erred by allowing evidence that he had allegedly threatened a co-conspirator and government witness, Wilcox, for testifying against him because it alerted the jurors that he was in custody shortly before trial."

We have held that district courts may consider evidence of threats to witnesses as relevant in showing consciousness of guilt. *United States v. Gonzalez*, 703 F.2d 1222, 1223 (11th Cir. 1983). Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed.R.Evid. 403. The trial judge must judge the threat's potential prejudice in the

6

same manner as he would other potentially prejudicial evidence.  *Gonzalez*, 703 F.2d at 1223.

The district court did not abuse its discretion by allowing testimony that King had made threatening statements to Wilcox prior to trial.  Wilcox's testimony was relevant because it tended to show his consciousness of guilt.  *See Gonzalez*, 703 F.2d at 1223.  The argument that the testimony was overly prejudicial because it informed the jurors that he was previously incarcerated is without merit since the jurors had to learn of King's previous incarceration to make the necessary findings with respect to count two charged in the indictment, because one element of that offense was that he was an inmate in a federal prison.

IV.    "That the evidence was insufficient to sustain his conviction for participation in the conspiracy to distribute a controlled substance."

Federal law provides that any person who attempts or conspires to commit [an offense such as §§ 841(a)(1), and (b)(1)(D)] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.  21 U.S.C. § 846.  Subsection 841(a)(1) proscribes manufacturing, distributing, or dispensing, or possessing with intent to manufacture, distribute, or dispense, a controlled substance. 21 U.S.C. § 841 (a)(1).

7

Whether the evidence is sufficient to support a defendant's conviction is reviewed *de novo*, to determine whether a reasonable jury could have concluded beyond a reasonable doubt that the defendant was guilty of the crimes charged viewing the evidence in the light most favorable to the government. *United States v. Toler*, 144 F.3d 1423, 1428 (11th Cir. 1998).

The government must prove beyond a reasonable doubt that there was: (1) an agreement between the defendant and one or more persons, (2) the object of which was to do either an unlawful act or a lawful act by unlawful means. *Toler*, 144, F.3d at 1426. The agreement is the "essential evil at which the crime of conspiracy is directed," and "agreement remains the essential element of the crime." *Toler*, 144, F.3d at 1425. There is no requirement that the government prove the commission of any overt acts in furtherance of the conspiracy. *United States v. Shabani*, 513 U.S. 10, 15, 115 S.Ct. 382, 385, 130 L.Ed.2d 225 (1994). We have indicated, however, that an "agreement may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser." *United States v. Mercer*, 165 F.3d 1331, 1335 (11th Cir. 1999) (per curiam).

In *United States v. Villegas*, 911 F.2d 623, 628 (11th Cir. 1990), we held that participation in a criminal conspiracy need not be proven by direct evidence, but

8

may be proven by circumstantial evidence. Nonetheless, "proof that the accused committed an act which furthered the purpose of the conspiracy is an example of the type of circumstantial evidence the government may introduce to prove the existence of agreement." *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1182 (11th Cir. 2006). The defendant need not have knowledge of all of the details of the conspiracy or be aware of all of the participants or participate in every stage, rather all that is required is that he intentionally joined the conspiracy. *United States v. Reed*, 980 F.2d 1568, 1582-1583 (11th Cir. 1993). In *Toler*, we said that "a defendant can be convicted even if his participation in the scheme is slight by comparison to the actions of other co-conspirators," so long as the defendant's intent to participate is proven beyond a reasonable doubt. *Toler*, 144 F.3d at 1428. The "uncorroborated testimony of an accomplice is sufficient to support a conviction . . . if it is not on its face incredible or otherwise insubstantial." *United States v. LeQuire*, 943 F.2d 1554, 1562 (11th Cir. 1991).

There was sufficient evidence to support the conviction in this case. The record shows that three inmates, Wilcox, Brown, and Helms, provided uncontradicted testimony that King purchased and distributed quantities of marijuana to Helms and other prisoners at Coleman. *See LeQuire*, 943 F.2d at 1562. The government's witnesses testified that from June until September 2003,

9

King made approximately three purchases of marijuana in quarter ounce and half ounce amounts. *See Mercer*, 165 F.3d at1335. Even if King did keep some of the marijuana for his personal use, the record supported a finding that he did not keep all of it. Rather, he sold drugs to other prisoners in the recreation yard and to his cell mate. The record showed that King intentionally joined the conspiracy when he assisted Wilcox to distribute the marijuana to others. *See Reed*, 980 F.2d at 1582-83.

These facts are further supported by Wilcox's testimony that King threatened him prior to trial, which showed a consciousness of guilt. *See Gonzalez*, 703 F.2d at 1223. In addition, extrinsic evidence from King's August 30 conduct further supports the jurors' finding that King possessed with intent to distribute marijuana because a correction officer testified that he saw a lot of traffic entering and exiting King's cell, and he discovered marijuana on his person. *See Arias-Izquierdo*, 449 F.3d at 1182.

Because each of the elements of the charged conspiracy offense was sufficiently proven, King failed to demonstrate that a reasonable jury could not have found beyond a reasonable doubt that he committed the offense for which he was convicted.

10

V. "That according to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the district court erred by applying the career offender enhancement where the fact of the predicate offenses was not charged in the indictment and was not proven to the jurors beyond a reasonable doubt."

Because King raised a constitutional objection to his sentence before the district court based on *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), we review the constitutional issue *de novo* and will reverse only for a harmful error. *United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005).

In *Almendarez-Torres v. United States*, 523 U.S. 224, 247, 118 S.Ct. 1219, 1232-33, 140 L.Ed.2d 350 (1998), the Supreme Court held that the government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of enhancing a sentence. Subsequent to its decision in *Almendarez-Torres*, the Supreme Court held in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Nevertheless, while the Supreme Court indicated in *Apprendi* that its decision in *Almendarez-Torres* might be called into question, it specifically decided not to

11

address the issue. *Apprendi*, 530 U.S. at 489-90, 120 S.Ct. at 2362. Since *Apprendi*, the Supreme Court has maintained an exception to its general rule for enhancements based upon judicial findings regarding prior convictions. *See Blakely*, 542 U.S. at 305, 124 S.Ct. at 2538; *Booker*, 543 U.S. at 230, 125 S.Ct. at 749-51.

Accordingly, we have upheld the decision in *Apprendi* and its progeny, and maintained that "a district court does not err by relying on prior convictions to enhance a defendant's sentence." *See e.g. United States v. Guadamuz-Solis*, 232 F.3d 1363 (11th Cir. 2000) (stating that "*Almendarez-Torres* remains the law"); *United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005) (holding that the district court did not violate the Sixth Amendment by using "admitted" facts to increase defendant's sentence); *United States v. Cantellano*, 430 F.3d 1142, 1147 (11th Cir. 2005) (holding that the fact of a prior conviction clearly may be found by the district court); *United States v. Orduno-Mireles*, 405 F.3d 960, 961 (11th Cir.), *cert. denied*, 126 S.Ct. 223 (2005) (explaining that the Sixth Amendment is not implicated when a defendant's sentence is enhanced based on a prior conviction).

Therefore, there was no *Blakely* error in this case.

Although King objected to the inclusion of two of his prior convictions in the career offender computation, he did not object to the three additional prior convictions which the district court found were also predicate offenses to the enhancement. *See Shelton*, 400 F.3d at 1330. Only two were needed for the career offender enhancement.

**AFFIRMED.**